FILED & JUDGMENT ENTERED
Steven T. Salata

Mar 26 2012

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_Laura T Beyer_
Laura T. Beyer
United States Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **WILLIAM W. GILLESPIE, JR. and** | ) | Chapter 11 |
| **JIMMIE C. GILLESPIE,** | ) | Case No. 10-30942 |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| **THERESA A. SELVIDIO,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding |
| v. | ) | No. 10-3187 |
| | ) | |
| **WILLIAM W. GILLESPIE, JR.,** | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER GRANTING
JUDGMENT ON PARTIAL FINDINGS TO THE DEFENDANT**

**THIS MATTER** is before the court for trial on the complaint of the Plaintiff, Theresa A. Selvidio ("Selvidio"), who alleges that the Defendant, William W. Gillespie, Jr. ("Gillespie"), owes her a non-dischargeable debt as a result of their mutual participation in a limited liability company called Core-Mark, LLC ("Core-Mark"). At the conclusion of Selvidio's evidence,

the court granted Gillespie's motion for judgment on partial findings pursuant to Fed. R. Bankr. P. 7052.  Selvidio established that she invested a significant sum of money in Core-Mark without getting a return on her investment and that another member of Core-Mark, who was not a party to this adversary proceeding, fraudulently spent the company's assets. Selvidio did not, however, establish that Gillespie personally owed her money as a result of the third party's mismanagement of Core-Mark.  In addition, even if she had established Gillespie's liability, Selvidio did not show that the debt should be excepted from discharge under 11 U.S.C. § 523.

### FINDINGS OF FACT

1.   Prior to the transactions at issue in this case, Gillespie was the sole managing member of Core-Mark, a limited liability company that acted as a general contractor.  Gillespie also owned Pioneer Land Development, LLC ("Pioneer") and Gillespie Properties, LLC ("Properties").  Pioneer performed all of the utility work for Core-Mark, and Properties owned and managed residential real estate rental properties.

2.   When Gillespie became busy running Core-Mark, Pioneer, and Properties, he decided to bring in William Harrison ("Harrison") as a co-managing member of Core-Mark to run the day-to-day operations and to allow Gillespie more time to perform work for Pioneer and Properties.

2

3. At about the same time Harrison became a managing member, he encouraged Selvidio to make an investment in Core-Mark. She did so based solely on the representations of Harrison and Internet research of Gillespie performed with the help of her son, Rick Selvidio ("Rick").

4. After Selvidio made her investment in Core-Mark, Rick became an employee of the LLC.

5. Selvidio never met nor talked to Gillespie before making her investment in Core-Mark. Rick assisted his mother in researching Gillespie, but he did not meet or speak to Gillespie prior to the investment either.

6. Core-Mark's operating agreement was subsequently amended to include Harrison and Selvidio as members.

7. Selvidio made an initial investment of $300,000 and a subsequent investment of $135,000.

8. Harrison deposited Selvidio's $135,000 check on behalf of Core-Mark, but he immediately transferred the same amount into his personal checking account.

9. Selvidio introduced evidence to show that, in addition to the transfer of the $135,000 into his checking account, there were other inappropriate transfers and purchases by Harrison, including his purchase of a $10,000 BMW motorcycle for his personal use and reimbursement by Core-Mark for a personal trip to Hawaii. Harrison also purchased products for Core-Mark that

3

the company simply did not need, including a backhoe, Bobcat construction equipment, two pick-up trucks (one for Harrison and one for Anthony Petty ("Petty"), an employee of Core-Mark), and expensive Timberline accounting software that the company did not even use.

   10.   Selvidio did not introduce any evidence of Gillespie using Core-Mark's assets for his personal expenses.  She did introduce evidence of accounting irregularities and sloppy bookkeeping on the part of Core-Mark.  For example, her evidence included transfers and double-billed entries between Pioneer and Core-Mark.  The evidence, however, is insufficient for the court to conclude that any of the transfers were improper, as the transfers appear to involve Core-Mark paying the legitimate invoices of Pioneer for utility work performed on behalf of Core-Mark.  The court recognizes that the accounting may have been sloppy and there may have been some double billing, but, ultimately, it appears that Pioneer's bills that were paid by Core-Mark were legitimate bills for work done by Pioneer.

   11.   Petty testified that Gillespie, on behalf of Pioneer, took a $100,000 loan from Core-Mark.  Petty also testified that this loan was almost immediately repaid.

   12.   Selvidio also introduced evidence of a $30,000 check that was written with Core-Mark as payee that went missing. Selvidio insinuated that Gillespie must have pocketed the

4

$30,000 check, but she did not introduce any bank evidence or other records sufficient to support such a finding by the court.

13. Selvidio introduced evidence that Gillespie was not involved in the day-to-day business of Core-Mark. Gillespie would come into the office on a daily basis and check-in with Rick, Harrison, and Petty, but he never took the opportunity to sufficiently review the books and records of Core-Mark. Selvidio asserts that if Gillespie thoroughly reviewed the books and records he would have discovered Harrison's embezzlement.

14. Selvidio's evidence also shows that when Gillespie learned about the theft of the $135,000 check and the purchase of the BMW motorcycle, he immediately took steps to have Harrison expelled as a managing member of Core-Mark, and Core-Mark pursued criminal charges against Harrison. In addition, after Harrison filed his own Chapter 7 bankruptcy in this district, case number 08-40500, Gillespie, Core-Mark, and Selvidio filed adversary proceeding number 08-4019 against Harrison as co-plaintiffs. Ultimately, the court dismissed that adversary proceeding without prejudice. Apparently the co-plaintiffs decided to dismiss the adversary proceeding because they believed Harrison was judgment proof.

15. Petty testified that, after attempting to keep the business alive despite Harrison's wrongdoing, Rick, Petty, and Gillespie eventually agreed that Core-Mark was no longer a going

5

concern. The North Carolina Secretary of State administratively dissolved Core-Mark on August 26, 2010.

16. Gillespie filed a Chapter 11 bankruptcy petition on April 6, 2010. He listed Selvidio in his schedules as an unsecured creditor owed a disputed debt of $200,000 for an "unsecured personal loan."

## CONCLUSIONS OF LAW

17. Selvidio did not specifically plead any causes of action in her complaint that would entitle her to damages, such as conversion, breach of fiduciary duty, or breach of contract. In the complaint, Selvidio only alleged causes of action under Section 523 for challenging the discharge of debt. In addition, Selvidio did not introduce sufficient evidence to support a claim for conversion, breach of fiduciary duty, breach of contract, or any other theory of liability. The only contract between Gillespie and Selvidio was the agreement between Gillespie and Harrison in which Selvidio was a third-party beneficiary. Selvidio has not introduced any evidence to support a finding that Gillespie breached that contract with respect to her.[1] Selvidio simply introduced evidence that she made a $435,000 investment in Core-Mark and that she only received a return of $10,000 on her investment. The failure to

---

[1] Even if Selvidio had introduced evidence sufficient to find that Gillespie breached the contract, damages for a simple breach of contract would not be excepted from discharge under section 523.

6

earn a return on an investment is not a sufficient basis on which to award damages.

18. Selvidio asserted that had Gillespie supervised Harrison more closely or reviewed the books of Core-Mark more thoroughly he could have prevented Harrison from taking some of the money from Core-Mark and, therefore, helped Selvidio earn a return on her investment. Yet she has not produced any evidence sufficient for the court to find exactly what the amount of the return on her investment might have been had Gillespie in fact more actively supervised Core-Mark. In other words, there is a causation problem. There is no causal link between the alleged lack of oversight by Gillespie and the loss of any profits that might have been earned by Selvidio.

19. Selvidio noted that Gillespie listed her in his bankruptcy schedules as a creditor with an unsecured claim in the amount of $200,000 based on a personal loan. Gillespie listed the claim as disputed. He should have listed the claim as a business debt of Core-Mark, but the court notes that improperly describing the claim is not a sufficient basis to find that Selvidio is entitled to damages.

20. The North Carolina Limited Liability Company Act, codified at Chapter 57C of the North Carolina General Statutes, provides that:

> A person who is a member, manager, director, executive, or any combination thereof of a

7

>>limited liability company is not liable for the obligations of a limited liability company solely by reason of being a member, manager, director, or executive and does not become so by participating, in whatever capacity, in the management or control of the business. A member, manager, director, or executive may, however, become personally liable by reason of that person's own acts or conduct.

N.C. G<small>EN</small>. S<small>TAT</small>. § 57C-3-30(a).[2] Therefore, Gillespie's status as a managing member does not make him personally liable for Core-Mark's debts. Gillespie could become personally liable for Core-Mark's debts if he engaged in specific acts or conduct that led to his liability; however, the conduct by Gillespie that Selvidio uses to attempt to establish his liability, such as accounting irregularities and failing to closely monitor the behavior of a fellow managing member who was hired to run day-to-day operations, are not the types of conduct the statute anticipates. See, e.g., Hamby v. Profile Products, L.L.C., 652 S.E.2d 231, 236 (N.C. 2007) ("[T]he liability of members or managers is not limited when they act outside the scope of managing the LLC. For example, 'personal guarantees executed by LLC members or managers are binding[,] . . . a member or manager can be a co-maker of an LLC obligation[,] . . . [and] a member or manager charged with collecting and paying over income tax

---

[2] Neither party directly addressed the issue of the proper state law to apply to the transactions at issue, although Selvidio's attorney referred to N.C. G<small>EN</small>. S<small>TAT</small>. § 57C-3-30 in his argument. Since Core-Mark was an LLC organized and operating in North Carolina and no party argued to the contrary, the court assumes that, to the extent state law determines the resolution of the issues in this case, the law of North Carolina governs.

8

withholding and other so-called "trust fund taxes" may be held liable for the failure to do so.' " (quoting H. BRYAN IVES, III, NORTH CAROLINA LIMITED LIABILITY COMPANIES 93 (1994))).

21. Selvidio presented a good deal of evidence about the fraudulent actions of Harrison. She would like the court to hold Gillespie personally liable for a fellow member's fraud that injured the business and led to the loss of her investment. There are many problems with Selvidio's theory, including the absence of any evidence from which the court could accurately calculate her damages. The biggest problem with this theory, however, is that it is contrary to North Carolina law. See, e.g., Godwin v. Vinson, 111 S.E.2d 180, 181 (N.C. 1959) ("It is settled law in this State that one partner may not sue in his own name, and for his benefit, upon a cause of action in favor of a partnership."); Mitchell, Brewer, Richardson, Adams, Burge & Boughman, PLLC v. Brewer, 705 S.E.2d 757, 766 (N.C. App. 2011) ("Therefore, Crouse establishes that individual claims may be brought by a plaintiff-member of a PLLC against a defendant-member of that PLLC if the injuries alleged were caused to the plaintiff individually by that defendant, but individual claims may not be brought by a plaintiff-member against a defendant-member of an PLLC if those injuries alleged are based on duties that arise as part of the PLLC." (citing Crouse v. Mineo, 658 S.E.2d 33, 41, 42 (N.C. App. 2008))). "The North Carolina

9

Limited Liability Company Act . . . does not create fiduciary duties among members." Kaplan v. O.K. Techs., L.L.C., 675 S.E.2d 133, 137 (N.C. App. 2009). North Carolina requires the manager of an LLC to exercise good faith and the care of an ordinary prudent person, see N.C. Gen. Stat. § 57C-3-22(b), but "[t]hese duties are owed by the manager to the company, rather than to other managers," Kaplan, 675 S.E.2d at 137. Gillespie owed a fiduciary duty to Core-Mark, not to Selvidio. Like a corporation alleging that a director has breached his fiduciary duty, the claim of a breach of fiduciary duty belongs to Core-Mark rather than to any individual member such as Selvidio. See id. Nevertheless, Selvidio named Gillespie as a party to this lawsuit and did not name Core-Mark. Filing suit against an individual member of an LLC in an attempt to collect money owed by the LLC to another member is a violation of North Carolina law. See N.C. Gen. Stat. § 57C-3-30(b) ("A member of a limited liability company is not a proper party to proceedings by or against a limited liability company, except where the object of the proceeding is to enforce a member's right against or obligation to the limited liability company."); Page v. Roscoe, LLC, 497 S.E.2d 422, 428 (N.C. App. 1998) ("The record sustains the trial court's conclusion that no acts by Bone, individually, were properly alleged. Therefore, under [§ 57C-3-30], it was improper to name an individual member of a limited liability

10

company as a party defendant without any evidence to support it. As such, the naming of Bone as an individual defendant was not well-grounded in law and therefore a violation of Rule 11."). Selvidio has not asserted the existence of a special duty owed by Gillespie that is personal, separate, and distinct from the duty that Gillespie owed the company.  Therefore, it appears that she lacks standing to sue Gillespie individually.  Any claim of a breach of fiduciary duty by Gillespie should have been brought as a derivative claim on behalf of Core-Mark.

22. Like most states, North Carolina's statutory scheme governing LLCs primarily relies on default rules instead of mandatory rules.  See N.C. Gen. Stat. § 57C-10-3(e) ("Except as otherwise provided in this Chapter, it is the policy of this Chapter to give the maximum effect to the principle of freedom of contract and to the enforceability of operating agreements.").  Members of an LLC can alter many of the default rules established by the North Carolina statutes through the provisions of an operating agreement.  The members of Core-Mark executed an operating agreement, as amended when Selvidio and Harrison became members, that further limits their personal liability.  In a paragraph titled "Indemnification of Members," the members of Core-Mark agreed that:

> No Member shall have any liability to the Company or to any Member for any mistakes or errors in judgment or for any act or omission reasonably believed by such Member

11

> to be within the scope of the authority conferred upon him or her by this Agreement, but will have liability only for acts or omissions involving his or her intentional misconduct or knowing violation of law, or any transaction in which he or she received a personal benefit in violation or breach of this agreement.

Plaintiff's Ex. 16. Selvidio's evidence does not establish that Gillespie committed intentional misconduct or a knowing violation of law, and there is no conclusive evidence that Gillespie received a personal benefit in violation of the agreement, so Selvidio's claim is contractually barred. In addition to the statutory impediments to the type of claim Selvidio attempts to assert in this action, she also consented to a contractual barrier.

23. Selvidio's evidence does not establish that Gillespie personally owes her a debt. Even had Selvidio established a claim against Gillespie, she did not introduce evidence sufficient to support the conclusion that the debt should not be discharged pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4), or (a)(6).

24. Section 523(a)(2)(A) excepts from discharge debts obtained through false pretenses, false representations, and/or actual fraud. Selvidio testified that Rick and Harrison encouraged her to invest in Core-Mark. In fact, she testified that she met and spoke to Gillespie for the first time when she went to the offices of Core-Mark after she made her investment

12

Case 10-03187   Doc 42   Filed 03/26/12   Entered 03/26/12 12:15:07   Desc Main
          Document     Page 13 of 16

in the business. The claim under section 523(a)(2)(A) must fail because Selvidio did not even claim that she had any contact whatsoever with Gillespie prior to investing her money. Selvidio admits that Gillespie did not make any representations, false or otherwise, so there is no basis to conclude that the debt, if there was one, would be excepted from discharge as fraudulent.

25. Section 523(a)(4) denies the discharge of a debt that is the product of embezzlement, larceny, or fraud or defalcation while acting in a fiduciary capacity.

26. As noted above, Selvidio did not prove any fraud by Gillespie. For the purposes of section 523(a)(4), defalcation is " 'misappropriation of trust funds or money held in any fiduciary capacity; [or the] failure to properly account for such funds.' " Frahm v. Macik, 2007 WL 1100793, at *4 (W.D.N.C. Mar. 29, 2007) (quoting Pahlavi v. Ansari, 113 F.3d 17, 20 (4th Cir. 1997)), rev'd on other grounds, Sartin v. Macik, 535 F.3d 284 (4th Cir. 2008). Gillespie did not owe Selvidio a fiduciary duty; instead, they both owed fiduciary duties to Core-Mark. In addition, the definition of "fiduciary" for the purposes of section 523(a)(4) is narrow, In re York, 205 B.R. 759, 763 (E.D.N.C. 1997), and relies on federal instead of state law, Clark v. Thompson (In re Thompson), No. 89-133, slip op. at 12 (Bankr. W.D.N.C. Mar. 20, 1990). " 'The term "fiduciary

13

capacity" as defined by federal law applies only to technical trusts, express trusts, or statutorily imposed trusts and not to fiduciary relationships which arise from an equitable or implied trust or an agency relationship.' " Id. (quoting Orem Postal Credit Union v. Twitchell (In re Twitchell), 91 B.R. 961, 963 (D. Utah 1988)). Selvidio did not introduce evidence of a technical trust, an express trust, or a statutorily imposed trust, so the court cannot find a defalcation.

27. Selvidio did introduce evidence of accounting irregularities, but these irregularities seem to be the result of sloppy bookkeeping, and there was no evidence to support an allegation of embezzlement or larceny on the part of Gillespie. Petty testified that Pioneer, under Gillespie's direction, borrowed a large sum of money from Core-Mark. Petty also testified that the loan was immediately paid back, so there was no harm to Core-Mark or Selvidio's investment therein. Selvidio alleged that Gillespie made sure that his related companies were paid before other creditors. Ensuring payment for a legitimate debt to your company does not rise to the level of embezzlement or larceny. Finally, Selvidio's witnesses testified about a $30,000 check that went missing, but they could only insinuate that Gillespie pocketed that money. Selvidio did not produce bank records or other evidence sufficient for the court to conclude that the check was stolen rather than simply lost.

28. Selvidio introduced a substantial amount of evidence about embezzlement on the part of Harrison, but, if the court found that Gillespie owed a debt to Selvidio personally, Harrison's embezzlement would not make that debt non-dischargeable.

29. Selvidio also alleged that section 523(a)(6) would prevent discharge of the debt she believes Gillespie owes. Section 523(a)(6) excepts debts that are the result of willful and malicious injury from discharge. "The Supreme Court has held that § 523(a)(6) applies only to 'acts done with *the actual intent to cause injury.*' " Keever v. Gallagher (In re Gallagher), 388 B.R. 694, 701 (W.D.N.C. 2008) (quoting Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998)).

> "Section 523(a)(6) is not satisfied by negligent, grossly negligent or reckless conduct. Moreover, the mere fact that a debtor engaged in an intentional act does not necessarily mean that he acted willfully and maliciously for purposes of § 523(a)(6). Nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."

Id. (quoting Duncan v. Duncan (In re Duncan), 448 F.3d 725, 729 (4th Cir. 2006)). " 'The test, then, is whether the debtor acted with "substantial certainty" [that] harm [would result] or a subjective motive to cause harm.' " Id. (quoting Parsons v. Parks (In re Parks), 91 Fed. App'x 817, 819 (4th Cir. 2003)). Selvidio has introduced no evidence to support a finding of

15

willful or malicious injury by Gillespie to her or her property. She certainly has introduced no evidence that he committed any act with the actual intent to injure her or that he acted with a substantial certainty that she would be harmed.

## CONCLUSION

Based on the foregoing, the court concludes that Gillespie does not owe a debt to Selvidio as a result of their mutual involvement in Core-Mark. The court also concludes that, even if there were a debt, it would be dischargeable in bankruptcy. A judgment so providing will be entered contemporaneously with the filing of this order.

This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of the Order.                     United States Bankruptcy Court

16